Pier Paolo Caputo, Esq. (SBN 176698)
LAW OFFICES OF PIER PAOLO CAPUTO
275 South Beverly Drive Suite 202
Beverly Hills, Calif. 90212
Telephone: (213) 488 -0377
Facsimile:  (213) 406-1252
paulcaputolawoffice@gmail.com

Attorneys for Plaintiffs:
SARKIS DAVODDANIEL

### IN THE UNITED STATES DISTRICT COURT

### FOR THE  CENTRAL DISTRICT OF CALIFORNIA

Sarkis *Davoddaniel*

     Plaintiff,

vs.

Bank of America, N.A.; BAC Home Loans
Servicing, LP; All Persons Unknown,
Claiming Any Legal Or Equitable Right, Title
Estate, Lien Or Interest In The Property
Described In The Complaint Adverse To
Plaintiff's Title, Or Any Cloud On Plaintiff's
Title Thereto, And Does 1 To 10, Inclusive.

     Defendants.

Case No.: **CV12 - 01801** DSF (JCx)

**Complaint For:**

1) **Specific Performance;**
2) **Unfair And Unlawful Business**
   **Practices**
   B&P 17200
3) **False Light**

**PUNITIVE DAMAGES DEMANDED**
**AND**
**JURY TRIAL REQUESTED**

Plaintiff for just cause alleges as follows:

### GENERAL ALLEGATIONS

1. Sarkis Davodanniel ("Plaintiff") is, and at all times mentioned herein, was an

   individual residing in the County of Los Angeles, State of California.

2.  Plaintiff is the owner of that certain residential real property commonly known as 20053 Livorno Way., Northridge, California 91326 (hereinafter "Residence" or "Subject Real Property").

3.  Plaintiff is informed and believes and thereupon alleges that Defendant Bank of America, N.A. (B.A.N.A.) is, and at all times mentioned herein, was a national banking association organized and existing under the laws of the Unites States doing business in the State of California.

4.  Plaintiff is informed and believes and thereupon alleges that Defendant BAC Home Loans Servicing, LP ("BAC Home Loans") is, and at all times mentioned herein, was a subsidiary of Bank of America N.A. a national banking association organized and existing under the laws of the United States doing business in the State of California.

5.  Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-100, inclusive, and therefore Plaintiff sues said Defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when and as same are ascertained.

6.  Plaintiff is informed and believes and thereupon alleges that, at all times herein mentioned and unless otherwise indicated,  each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and/or employment.

7.  This Court has jurisdiction under 28 U.S.C. § 1345

8.  Venue is proper under 28 U.S.C. § 1391.

### FIRST CAUSE OF ACTION

### (Specific Performance)

**Against Defendants BAC Home Loans Servicing and Doe Defendants 1 -100, inclusive**

9. Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 to 6, inclusive, of this complaint.

10. On or about April 19, 2004 Plaintiff executed and delivered a promissory note ("NOTE") in favor of Countrywide Bank, FSB ("Countrywide") in the principal sum of $372,000. Said Note was secured by a **DEED OF TRUST** ("DOT") on the subject real property.  (Attached hereto and incorporated by reference as "Exhibit A").

11. On or about March 26th, 2010, Defendant BAC Home Loans drafted and prepared a contract for a Loan Modification Agreement ("LMA") to modify Plaintiff's mortgage payments. The contract named Plaintiff and Defendant BAC Home Loans as parties to the LMA Agreement. A copy of the LMA is attached hereto and incorporated herein by reference as "Exhibit B."

12. The LMA was drafted and finalized by defendant BAC Home Loans. The terms and conditions in the LMA were also those which BAC had unilaterally formulated and demanded Plaintiff to agree to.

13. The following clause in the LMA Agreement expressly states that the loan modification is for valuable consideration:

> In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrowers(s) of a written request for such replacement. [LMA ¶ 5]

14. BAC Home Loans required that Plaintiff return the signed LMA along with one month mortgage payment in the amount of $600.90.

15. Plaintiff earnestly complied with and faithfully submitted to BAC Home Loans the signed LMA and mortgage payment in the amount of $600.90 as Defendant required.

16. Under the terms of said LMA Plaintiff's mortgage payments would be modified from $1,992.15 per month to a step graduated amount with terms as follows:

    a) The first change date would occur on the 1st day of May 2010 with a monthly principal and interest payment of $600.90 from June 2010 to May 2011.

    b) The second change date would occur on the 1st day of May 2011 with a monthly principal and interest payment of $901.35 from June 2012 to May 2013.

    c) The third change date would occur on the 1st day of May 2012 with a monthly principal and interest payment of $901.35 from June 2012 to May 2013.

    d) The fourth change date would occur on the 1st day of May 2013 with a monthly principal and interest payment of $1,201.80 from June 2013 to May 2014.

    e) The fifth change date would occur on the 1st day of May 2014 with a monthly principal and interest payment of $1,502.24 from June 2014 to May 2015.

17. Plaintiff has at all times herein performed all terms and conditions under the LMA by making the payments as specified therein.

18. Plaintiff, made his mortgage payments timely and performed all terms and conditions as required by the terms of the LMA. He made a total of eleven payments from June 2010 to May 2011.

19. On or about May 2011, Defendant BAC Home Loans elected to no longer honor the LMA Agreement it had entered into with Plaintiff, even though BAC

had already accepted eleven payments from Plaintiff. Consequently, BAC Home Loans unilaterally rescinded the LMA Agreement, and refused to acknowledge its validity

20. BAC Home Loans stated to Plaintiff that the reason why it could not honor the terms of the agreement is because the agreement was never signed by BAC Home Loans. As of the filing date of this complaint Defendant BAC Home Loans still refuses to honor the LMA and fails to perform on said contract.

## SECOND CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES

## Against Defendants B.A.NA. AND BAC Home Loans Servicing, and Doe Defendants 5 -100, inclusive

21. Plaintiffs re-allege and incorporate by reference all allegations appearing in paragraphs 1 to 19, inclusive, of this complaint as though fully set forth herein in their entirety.

22. Defendant BAC Home Loan is in the business of providing and servicing residential home loans. Through merger / acquisition, Defendant BAC Home Loans originated Plaintiff's loan through its predecessor Countrywide Home Loans.

23. As part of Defendant BAC Home Loan's business practice, said Defendant represents to its borrowers that it modifies residential home loans. Although Defendant BAC Home Loan is an experienced lender, the majority of its loan modifications are processed and then denied in bad faith. The denial is followed by an immediate attempt to foreclose on the borrower's property. Plaintiffs are victims of such business practice.

24. Plaintiff is informed and believes that BAC Home Loans' compensation from the U.S. Treasury is approximately $2.6 billion dollars for processing loan modification under the HAMP program.  The government's purpose of the HAMP program is to stabilize the Nation's economy and help homeowners (such the Plaintiff herein) to preserve their residence. Plaintiff is informed and believes that BAC has denied over 90% of the loan modifications in bad faith.

25. The reason for BAC Home Loans denying and reneging on loan modifications is for the sole purpose of profiting from the foreclosure and resale of the residence, while at the same time, collecting fees from the U.S. Treasury for processing the HAMP program.

26. Although Plaintiff has diligently performed his obligations pursuant to the terms and conditions of the LMA, Defendant BAC Home Loans has reported to all credit reporting agencies that Plaintiff has failed to make the mortgage payments as agreed by the parties.

27. Plaintiff has no legitimate business reason to disallow Plaintiff from a loan modification under HAMP.

28. Defendant BAC Home Loans and Does 1 – 35's unfair business conduct of denying loan modifications in bad faith and then foreclosing on borrowers' property has a harmful affect to the public, because it causes neighborhood blight due to massive inventory of dilapidated abandoned homes in the county of Los Angeles in violation of local building and safety codes.

29. Plaintiff is informed and believes that Defendant BAC home loan's processing and denying loan modifications was without proper business justification.

30. Defendants Does 5 -35 have assisted Defendant BAC Home Loan in the unfair business practices stated herein.

31. Defendant BAC Home loans' failure to process Plaintiff's loan modification in good faith harmed Plaintiff by causing plaintiff financial losses and risk losing his home.

## THIRD CAUSE OF ACTION

### FALSE LIGHT

### Against Defendants BAC Home Loans Servicing,

### and Doe Defendants 5 -100, inclusive

31. Plaintiff re-alleges and incorporates by reference all allegations appearing in paragraphs 1 to 30, inclusive, of this complaint as though fully set forth herein in their entirety.

32. Plaintiff has performed all terms and conditions of the LMA Agreement, including making all the payments as agreed by the parties ( ie Plaintiff and Defendant BAC home loan) through the LMA agreement.

33. Defendant BAC Home Loans Servicing has reported to all credit reporting agencies that Plaintiff has not made the monthly payments as agreed by the parties.

34. Said information is false because plaintiff unequivocally complied with the terms of the LMA Agreement as agreed by the parties, including promptly making the monthly payments that defendant BAC home loan requested under the LMA Agreement.

35. The information provided to the credit bureaus by BAC Home Loans Servicing has placed Plaintiff in a false light by implying that Plaintiff is not credit worthy.

36. Plaintiff is entitled to punitive damages according to proof for BAC Home Loans Servicing's misrepresentation to and through the credit bureaus about Plaintiff's payment habits.

**WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

ON ALL CAUSES OF ACTION:

1. Plaintiff seeks that Defendant specifically perform under the LMA by executing and honoring said agreement.

2. restitution and all other money damages in an amount to be proved at trial for Defendants' violation of the terms of said agreement;

3. For Punitive Damages;

4. For attorney fees and costs of suit herein incurred; and

5. For such other further relief as the Court may deem just and proper.

///

///

Dated: February 5, 2012

LAW OFFICE OF PIER PAOLO CAPUTO

_____
Pier Paolo Caputo, Esq.
Attorneys for Plaintiff

Branch :NAO,User :TT25                    Comment:                              Station Id :RZJB

This page is part of your document - DO NOT DISCARD



04 1028342

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**04/27/04 AT 08:00am**

## TITLE(S) :

L E A D   S H E E T

| FEE | |
|-----|-----|
| FEE $ 79-  M | |
| DAF $ 2- | 25 |
| C-20 | |

D.T T

**NOTIFICATION SENT-$4** 

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown

THIS FORM NOT TO BE DUPLICATED

## CHICAGO TITLE-SUBDIVISION

2

Recording Requested By
K. BUDDE

04 1028342

After Recording Return To·
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By
FERNANDO BRIONES

————————— [Space Above This Line For Recording Data] —————————

22212-BT                         0005467479004004
(Escrow/Closing #)                  [Doc ID #]

# DEED OF TRUST

MIN 1000157-0003335008-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in
Section 16

(A) "Security Instrument" means this document, which is dated APRIL 19, 2004        , together
with all Riders to this document
(B) "Borrower" is

SARKIS DAVODDANIEL, A SINGLE MAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

Initials

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291       Form 3005 1/01
CONV/VA

* 2 3 9 9 1 *

* 0 5 4 6 7 4 7 9 0 0 0 0 0 0 1 0 0 6 A *

31077310-X07

DOC ID #: 0005467479004004

Borrower's address is
16700 CHATSWORTH STREET #P-4, GRANADA HILLS, CA 91344
Borrower is the trustor under this Security Instrument
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88; SIMI VALLEY, CA 93065 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS
(F) "Note" means the promissory note signed by Borrower and dated APRIL 19, 2004        The Note states that Borrower owes Lender
THREE HUNDRED SEVENTY TWO THOUSAND and 00/100

Dollars (U S $ 372,000.00        ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 01, 2034        .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

| [X] Adjustable Rate Rider | [X] Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers
(M) "Escrow Items" means those items that are described in Section 3
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii)

(VMP) -6A(CA) (0207)        CHL (09/02)        Page 2 of 16        Initials _____        Form 3005 1/01

04 1028342

Branch :NAO,User :T125                    Comment:                                    Station Id :RZJB

DOC ID #: 0005467479004004

conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C.F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                of                        LOS ANGELES

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number. 2701002013                          which currently has the address of
                          20053 LIVORNO WAY, NORTHRIDGE
                                        [Street/City]
California      91326        ("Property Address")
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including,

Initials

-6A(CA) (0207)        CHL (09/02)          Page 3 of 16                                Form 3005 1/01

04 1028342

DOC ID #: 0005467479004004

but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)    CHL (08/02)      Page 4 of 16      Initials    Form 3005 1/01

**04 1028342**

Branch :NAO,User :T125                          Comment:                          Station Id :RZJB

DOC ID #: 0005467479004004

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)          CHL (09/02)          Page 5 of 16          Initials          Form 3005 1/01

04 1028342

Branch :NAO,User :T125                              Comment:                                                   Station Id :RZJB

DOC ID #: 0005467479004004

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)          CHL (09/02)          Page 6 of 16          Initials ___          Form 3005 1/01

**04 1028342**

Branch :NAO,User :T125                    Comment:                               Station Id :RZJB

DOC ID #: 0005467479004004

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)        CHL (09/02)          Page 7 of 16              Initials                Form 3005 1/01

04 1028342

Branch :NAO,User :T125                    Comment:                                    Station Id :RZJB

*9*

DOC ID #: 0005467479004004

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials ___

-6A(CA) (0207)        CHL (09/02)            Page 8 of 16                           Form 3005 1/01

## 04 1028342

Branch :NAO,User :T125                    Comment:                                    Station Id :RZJB

/ò

DOC ID #: 0005467479004004

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further.

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)          CHL (08/02)            Page 9 of 18                              Initials                Form 3005  1/01

04  1028342

Branch :NAO,User :T125                    Comment:                                    Station Id :RZJB

DOC ID #: 0005467479004004

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:
(a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value
divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss
in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value
of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of
the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and
Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this
Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing
Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to
respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply
the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this
Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower
Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous
Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in
Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest
in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration
has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a
ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's
interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for
damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and
shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in
the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for
payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to
Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any
Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any
Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of
the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any
Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including,
without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of
Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any
right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and
agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who
co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security
Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this
Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and
(c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any
accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's
consent

04  1028342

/2

DOC ID #: 0005467479004004

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials

-6A(CA) (0207)          CHL (09/02)              Page 11 of 16                    Form 3005 1/01

04  1028342

*13*

DOC ID #: 0005467479004004

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials

Branch :NAO,User :T125                    Comment:                                        Station Id :RZJB

*14*

DOC ID #: 000546747900<u>4004</u>

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21. **Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

☺ -6A(CA) (0207)          CHL (08/02)          Page 13 of 16                    Initials ___          Form 3005 1/01

**04 1028342**

Branch :NAO,User :T125                    Comment:                                    Station Id :RZJB

15

DOC ID #: 0005467479004004

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)          CHL (09/02)          Page 14 of 16                    Initials          Form 3005 1/01

04 1028342

*16*

DOC ID #: 0005467479004004

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____        _Sarkis Davoddaniel_ (Seal)
                                        SARKIS DAVODDANIEL            -Borrower

_____        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

                                        _____ (Seal)
                                                                     -Borrower

-6A(CA) (0207)        CHL (09/02)        Page 15 of 16                Form 3005 1/01

04 1028342

*17*

DOC ID #: 0005467479004004

State of California
County of *LOS ANGELES*                                    } ss.

On *APRIL 21, 2004* before me, *B TODD*

personally appeared

*SARKIS DAVODDANIEL*

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal



_____ (Seal)

B TODD
Commission # 1310788
Notary Public - California
Los Angeles County
My Comm. Expires Jul 21, 2005

-6A(CA) (0207)        CHL (09/02)        Page 16 of 18        Initials _____        Form 3005 1/01

**04 1028342**

Branch :NAO,User :T125                                    Comment:                                           Station Id :RZJB

*18*

Prepared by FERNANDO BRIONES

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0000245
18044 CULVER DRIVE
IRVINE, CA 92612
Phone: (949)552-2777
Br Fax No.: (949)552-2770

DATE        04/19/2004
CASE #
DOC ID #     0005467479004004
BORROWER SARKIS DAVODDANIEL
PROPERTY ADDRESS 20053 LIVORNO WAY
                        NORTHRIDGE, CA 91326

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
● Legal Description Exhibit A
1C404-XX (04/03)(d)





**04 1028342**

Branch :NAO,User :T125                                    Comment:                                              Station Id :RZJB

DESCRIPTION

ge   1
Order No   31077310

A CONDOMINIUM COMPRISED OF                    **SEE EXHIBIT A**

PARCEL 1

AN UNDIVIDED 1/27TH INTEREST IN AND TO THAT PORTION OF LOT 1 OF TRACT NO
53783-01, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1280 PAGES 31 TO 38 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY SHOWN AND DEFINED AS "PHASE
1" IN THE CONDOMINIUM PLAN RECORDED SEPTEMBER 4, 2003 AS INSTRUMENT NO
03-2570423 OFFICIAL RECORDS

EXCEPT THEREFROM UNITS 1 TO 27 INCLUSIVE AND ASSOCIATION PROPERTY AS SHOWN AND
DEFINED IN THE CONDOMINIUM PLAN ABOVE MENTIONED

PARCEL 2

UNIT 10 AS SHOWN AND DEFINED IN THE CONDOMINIUM PLAN ABOVE MENTIONED

EXCEPT FROM THAT PORTION OF SAID LAND AS DESCRIBED IN THE DEED REFERRED TO
HEREIN, AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS AND MINERALS IN, AND
UNDER SAID LAND, AS RESERVED IN DEED FROM GRACE E  DUNCAN, RECORDED SEPTEMBER
26, 1939 AS INSTRUMENT NO. 504, IN BOOK 16955, PAGE 29, OFFICIAL RECORDS

ALSO EXCEPT FROM THE REMAINDER OF SAID LAND AS DESCRIBED IN THE DEED REFERRED TO
HEREIN, ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND
OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER
OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID
LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE
PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE
OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT NATURAL SURFACE OF THE
GROUND, EXCEPT AS PROVIDED IN THE DEED NEXT HEREIN REFERRED TO, AS RESERVED BY
PORTER SESNON, BARBARA SESNON CARTAN AND WILLIAM T  SESNON, JR , IN THE DEED
RECORDED DECEMBER 21, 1962 AS INSTRUMENT NO  4537 IN BOOK D-1863 PAGE 473,
OFFICIAL RECORDS, UPON THE TERMS, CONDITIONS AND PROVISIONS THEREIN SET FORTH.

04 1028342

*21*

DOC ID #: 0005467479004004

THIS CONDOMINIUM RIDER is made this NINETEENTH       day of APRIL, 2004       , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
20053 LIVORNO WAY, NORTHRIDGE, CA 91326
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium
project known as

TUSCANT/ONE
[Name of Condominium Project]

(the "Condominium Project") If the owners association or other entity which acts for the Condominium Project
(the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the
Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of
Borrower's interest

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows
    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents The "Constituent Documents" are the (i) Declaration or any
other document which creates the Condominium Project, (ii) by-laws, (iii) code of regulations, and (iv) other
equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to
the Constituent Documents
    B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which
provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by
fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, from which Lender requires insurance, then (i) Lender waives the provision in Section
3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property,
and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy
    What Lender requires as a condition of this waiver can change during the term of the loan.
    Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided
by the master or blanket policy
    In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss
to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby
assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or
not then due, with the excess, if any, paid to Borrower

Initials
-8R (0008) 02   CHL (12/01)                    Page 2 of 3                       Form 3140 1/01

04 1028342

Branch :NAO,User :T125                              Comment:                                    Station Id :RZJB

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

——————————————— [Space Above This Line For Recording Data] ———————————————

# CONDOMINIUM RIDER

Prepared By
FERNANDO BRIONES

22212-BT                        0005467479004004
[Escrow/Closing #]                   [Doc ID #]

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    Page 1 of 3                              Initials
-8R (0008) 02    CHL (12/01)(d)   VMP MORTGAGE FORMS - (800)521-7291                Form 3140 1/01
CONV/VA

* 2 3 9 9 1 *

* 0 5 4 6 7 4 7 9 0 0 0 0 0 0 1 0 0 8 R *

04 1028342

LOS ANGELES,CA                      Page 20 of 26                   Printed on 12/21/2011 4:32:38 PM
Document: TD 2004.1028342

22

DOC ID #: 0005467479004004

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Sarkis Davoddaniel_ _____ (Seal)
SARKIS DAVODDANIEL                                    - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

-8R (0008) 02    CHL (12/01)            Page 3 of 3                    Form 3140  1/01

04 1028342

Branch :NAO,User :T125                    Comment:                              Station Id :RZJB

23

Assessor's Parcel Number

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By·
FERNANDO BRIONES
Recording Requested By·

———————— [Space Above This Line For Recording Data]————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

|  |  |
|---|---|
| 22212-BT | 0005467479004004 |
| [Escrow/Closing #] | [Doc ID #] |

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/03)(d)                    Page 1 of 4                    Initials



* 2 3 9 9 1 *                          * 0 5 4 8 7 4 7 9 0 0 0 0 0 0 1 U 7 9 8 *

04 1028342

Branch :NAO,User :T125                    Comment:                            Station Id :RZJB

*24*

DOC ID #: 0005467479004004

THIS FIXED/ADJUSTABLE RATE RIDER is made this NINETEENTH        day of
APRIL, 2004      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at
20053 LIVORNO WAY
NORTHRIDGE, CA 91326
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of        3.500 %. The Note also provides for
a change in the initial fixed rate to an adjustable interest rate, as follows

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first        day of MAY, 2007      , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter The date on which my initial fixed interest rate changes to
an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change
Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index The "Index" is
the average of interbank offered rates for one year U S dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the date 45
days before each Change Date is called the "Current Index"
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information The Note Holder will give me notice of this choice

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER        percentage points (        2.250 %) to the Current Index
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate
until the next Change Date
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new
interest rate in substantially equal payments The result of this calculation will be the new amount of my
monthly payment

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)                    Page 2 of 4                    Initials ___

04 1028342

Branch :NAO,User :T125                Comment:                                    Station Id :RZJB

25

DOC ID #: 0005467479004004

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        5.500  % or less than     2.250  %  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months  My interest rate will never be greater than        9.500  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change  The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows.

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

2  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
   INTEREST ONLY
1U796-XX (06/03)                        Page 3 of 4                        Initials

04 1028342

DOC ID #: 000546747900004004

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider

_Sarkis Davoddaniel_ _____ (Seal)
SARKIS DAVODDANIEL                                    -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/03)                    Page 4 of 4

04 1028342

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn Home Retention Division: FWACN-HRD
4500 Amon Carter Blvd.
Fort Worth, TX 76155

Loan #: 54674790

----------------------------FOR INTERNAL USE ONLY----------------------------

## LOAN MODIFICATION AGREEMENT
### (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 26th day of March 2010, between SARKIS DAVODDANIEL, and BAC Home Loans Servicing, LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 19th day of April 2004 and in the amount of $372,000.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 20053 LIVORNO WAY, NORTHRIDGE, CA 91326.

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1  As of the 1st day of June 2010, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $360,538.67 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of (See Attached Addendum) from the 1st day of May 2010.  The Borrower promises to make monthly payments of principal and interest of U.S. (See Attached Addendum) beginning on the 1st day of June 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of May 2034 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3  The Borrower will make such payments at 4500 Amon Carter Blvd., Fort Worth, TX 76155 or at such other place as the Lender may require.

4  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_____          3/30/2010
SARKIS DAVODDANIEL                        Dated

GAGIK KARAGEZIAN
Commission # 1788163
Notary Public - California
Los Angeles County
My Comm. Expires Jun 30, 2012

STATE OF  California
COUNTY OF  Los Angeles
On  3-30-2010  Before  Gagik Karagezian
Notary Public, personally appeared  Sarkis Davoddaniel
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

BAC Home Loans Servicing, LP

By: _____               Dated: _____

STATE OF _____

COUNTY OF _____

On _____ Before _____

Notary Public, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

| | | |
|---|---|---|
| Date: | March 26, 2010 | Please Return to: |
| RE: BA2 Loan# | 54674790 | BAC Home Loans Servicing, LP |
| Mortgagor: | SARKIS DAVODDANIEL | Attn Home Retention Division |
| Property Address: | 20053 LIVORNO WAY | 100 Beecham Drive Suite 104 |
| | NORTHRIDGE, CA 91326 | Pittsburgh, PA 15205 |

## STEP RATE LOAN MODIFICATION ADDENDUM
## TO LOAN MODIFICATION AGREEMENT

The Step Rate Loan Modification Agreement Addendum (the "Addendum") is made this 26th day of March 2010, and is incorporated into and shall be deemed a part of that certain Loan Modification Agreement of even date herewith (the "Agreement") between SARKIS DAVODDANIEL, and BAC Home Loans Servicing, LP ("Lender"), which agreement amends and supplements that certain Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument").

## THIS ADDENDUM CONTAINS PROVISIONS PROVIDING FOR SCHEDULED INCREASES IN THE INTEREST RATE AND MONTHLY PAYMENT

In consideration of the mutual promises and agreements exchanged and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Agreement, Security Instrument or the promissory note (the "Note"), except as specifically provided for herein):

### 1. Interest Rate and Monthly Payment Increases.

Notwithstanding anything to the contrary contained in the Note or referenced in the Agreement, the monthly principal and interest payment shall be calculated as follows:

The interest rate used to determine the monthly principal and interest payment shall change on the 1st day of May 2010 and on that day of every twelfth month thereafter (each such date, a "Change Date"), with the last such change date occurring on the 1st day of May 2015.

a) The First Change Date shall occur on the 1st day of May 2010 at which time the interest rate shall be 2.000%. The monthly principal and interest payment shall be $600.90 and shall be due and payable on 1st day of June 2010 and continuing thereafter on the same day of each succeeding month until 1st day of May 2011.

b) The Second Change Date shall occur on the 1st day of May 2011 at which time the interest rate shall be 3.000%. The monthly principal and interest payment shall be $901.35 and shall be due and payable on 1st day of June 2011 and continuing thereafter on the same day of each succeeding month until 1st day of May 2012.

c) The Third Change Date shall occur on the 1st day of May 2012 at which time the interest rate shall be 3.000%. The monthly principal and interest payment shall be $901.35 and shall be due and payable on 1st day of June 2012 and continuing thereafter on the same day of each succeeding month until 1st day of May 2013.

d) The Fourth Change Date shall occur on the 1st day of May 2013 at which time the interest rate shall be 4.000%. The monthly principal and interest payment shall be $1,201.80 and shall be due and payable on 1st day of June 2013 and continuing thereafter on the same day of each succeeding month until 1st day of May 2014.

e) The Fifth Change Date shall occur on the 1st day of May 2014 at which time the interest rate shall be 5.000%. The monthly principal and interest payment shall be $1,502.24 and shall be due and payable on 1st day of June 2014 and continuing thereafter on the same day of each succeeding month until 1st day of May 2015.

Thereafter, monthly principal and interest payment shall remain the same until such time as the principal and interest due under the Note are paid in full. If on 1st day of May 2034 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by the Agreement and this Addendum, the Borrower shall pay these amounts in full on the Maturity Date.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BAC Home Loans Servicing, LP

By: _____          Dated: _____

_____

STATE OF _____

COUNTY OF _____

On _____ Before _____

Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Signature

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
**Attn Home Retention Division: FWACN-HRD**
4500 Amon Carter Blvd.
Fort Worth, TX 76155

Loan #:  54674790

-----------------------------------------------FOR INTERNAL USE ONLY----------------------------------------------------

# LOAN MODIFICATION AGREEMENT
## (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 26th day of March 2010, between SARKIS DAVODDANIEL, and BAC Home Loans Servicing, LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 19th day of April 2004 and in the amount of $372,000.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 20053 LIVORNO WAY, NORTHRIDGE, CA 91326.

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1   As of the 1st day of June 2010, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $360,538.57 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of (See Attached Addendum) from the 1st day of May 2010.  The Borrower promises to make monthly payments of principal and interest of U.S. (See Attached Addendum) beginning on the 1st day of June 2010,  and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of May 2034 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3   The Borrower will make such payments at 4500 Amon Carter Blvd., Fort Worth, TX 76155 or at such other place as the Lender may require.

4   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_____          3/30/2010
SARKIS DAVODDANIEL                                                              Dated

BAC Home Loans Servicing, LP
Attn Home Retention Division
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Loan #:  **54674790**

# California All-Purpose Acknowledgment

STATE OF _____

COUNTY OF _____

On _____     before me _____
          Date                                      Name & Title of Officer

Notary Public, personally appeared _____
                                                        Name (s) of Signer (s)

_____

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signatues (s) on the instrument the person (s), or entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and correct.

WITNESS my hand and official seal

Signature _____     (Seal)

Notary Public Name Printe

My Commission Expires:

_3/30/2010_____     _Soor_____
Dated                                             **SARKIS DAVODDANIEL**

_____
Dated

BA2 Loan#     54674790

BAC Home Loans Servicing, LP
Attn Home Retention Division
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Loan #:  54674790

## California All-Purpose Acknowledgment

STATE OF _California_

COUNTY OF _Los Angeles_

On _3/30/2010_ before me _Gagik Karagezion_
   Date                           Name & Title of Officer

Notary Public, personally appeared _Sarkis Davoddaniel_
                                Name (s) of Signer (s)

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged me that he/she/they executed the same in his/her/their authorized capacity (ies) and that by his/her/their signatures (s) on the instrument the person (s), or entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and correct.

WITNESS my hand and official seal

Signature _Gagik Karagezion_ (Seal)

Notary Public Name Printe _GAGIK KARAGEZIAN_

My Commission Expires:

_3/30/2010_
Dated

_____
Dated

                                 SARKIS DAVODDANIEL

GAGIK KARAGEZIAN
Commission # 1788163
Notary Public - California
Los Angeles County
My Comm. Expires Jan 30, 2012

BA2 Loan#  54674790

Name & Address:
Pier Paolo Caputo, Esq. (SBN 176698)
275 South Beverly Drive Suite 202
Beverly Hills, Calif. 90212

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

SARKIS *Davoddaniel*

PLAINTIFF(S)

v.

Bank of America, N.A.; BAC Home Loans Servicing,
LP; All Persons Unknown, Claiming Any Legal Or
Equitable Right, Title Estate, Lien Or Interest In The P

*See Attachment*                    DEFENDANT(S).

CASE NUMBER

CV12-01801 DSF (JCx)

SUMMONS

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _Pier Paolo Caputo, Esq._____, whose address is
_275 South Beverly Dr. #202, Beverly Hills, CA, 90212_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint. You also must file
your answer or motion with the court.

MAR - 2 2012

Clerk, U.S. District Court

Dated: _____

By: **JULIE PRADO**_____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SARKIS, *Davoddaniel*

**DEFENDANTS**
Bank of America, N.A.; BAC Home Loans Servicing, LP; All Persons Unknown, Claiming Any Legal Or Equitable Right, Title Estate, Lien Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Pier Paolo Caputo, Esq. (SBN 176698)
275 South Beverly Drive Suite 202
Beverly Hills, Calif. 90212

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Unfair And Unlawful Business Practices B&P 17200 and False Light

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☒ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV12-01801

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ Yes
If yes, list case number(s): 5:CV-0160-VAP-0P

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 2/29/12

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |